UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| JESUS DEJESUS, | ) |
|               **Plaintiff,** | ) |
| v. | )    No.: 22-cv-1134-MMM |
| LEONTA JACKSON, *et al.*, | ) |
|               **Defendants.** | ) |

**MERIT REVIEW ORDER**

Plaintiff, proceeding *pro se* and incarcerated at Pontiac Correctional Center, asserts an action under 42 U.S.C. § 1983 arising from a cellmate's attack. The case is before the Court for a merit review pursuant to 28 U.S.C. § 1915A. In reviewing the Complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour,* 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**FACTS**

Plaintiff alleges that he was violently assaulted by his cellmate, Chase McClanhan, in south P.C. cell 809 at approximately 6:00 a.m. on March 23, 2021. When Correctional Officers Harrms and Morgan came on the gallery for count at 7:00 a.m., Plaintiff told them what happened and showed them the injuries to his face and arm. The officers told Plaintiff they would speak with Lieutenant Thorsin and walked away. Thorsin came to Plaintiff's cell with a COVID-19 tester and

1

asked McClanhan "if he was going to do this again." McClanhan told Thorsin "no." Thorsin spoke with Plaintiff, saw his injuries, and told Plaintiff not to go to yard or to any call passes. Plaintiff tried to give Thorsin a sign that he needed help. Plaintiff told Harmms that he was trying to move out of the cell, and Harmms told Plaintiff that SGT Conwell and Thorsin had said that they were not moving anyone because it was time to go home. Plaintiff alleges that he was left in the cell for 24 hours until he was taken to see medical staff. Plaintiff states that a hard cast was put on his right arm due to a fractured ulna. He also underwent oral surgery and his mouth was wired shut for 10 weeks.

## ANALYSIS

Plaintiff appears to be seeking to hold Defendants liable for the cellmate's attack. Prison officials must "take reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). For a prison official to be held liable on a failure to protect claim, a plaintiff must satisfy a test that contains both an objective and subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

To satisfy the objective component, a plaintiff must present evidence showing "not only that he or she experienced, or was exposed to, a serious harm, but also that there was a substantial risk beforehand that that serious harm might actually occur." *Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005). A "substantial risk" is one that is so great that it is "almost certain to materialize if nothing is done." *Id.* at 911.

To satisfy the subjective component, the official must know of and disregard an excessive risk to a prisoner's safety. *Farmer*, 511 U.S. at 837. To support an inference that an official had actual knowledge of a substantial risk of harm, the inmate's complaint to the official typically must identify "a specific, credible, and imminent risk of serious harm." *Gevas v. McLaughlin*, 798 F.3d

475, 481 (7th Cir. 2015). "[T]here must be a 'strong likelihood' rather than a 'mere possibility' that violence will occur." *Estate of Davis v. Johnson*, 745 F.2d 1066, 1071 (7th Cir. 1984). An inmate's complaint that conveys "only a generalized, vague, or stale concern about one's safety typically will not support [such] an inference." *Gevas*, 798 F.3d at 480.

"A prison official must respond reasonably to a known risk of harm, but negligence or even gross negligence is not enough to show a constitutional violation." *Giles v. Tobeck*, 895 F.3d 510, 513 (7th Cir. 2018). "Instead the official's response must be so inadequate that it amounts to a reckless disregard for the risk and 'effectively condones the attack.'" *Id.* (internal citation omitted) (quoting *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010)).

Plaintiff does not allege that Defendants were present when the attack occurred, and the current allegations do not suggest that a reasonable officer should have been on notice that Plaintiff's cellmate posed a risk of physical harm to Plaintiff prior to the attack. *See Kemp v. Fulton Cnty.*, 27 F.4th 491, 497 (7th Cir. 2022) ("Without any evidence that [the officer] should have been on notice of a substantial risk to [the detainee's] safety, a jury could not conclude that [the officer's] actions were objectively unreasonable."). After Defendants were informed about the attack and injuries, however, Plaintiff remained in the cell for another 24 hours, despite his requests to be moved to another cell. Based on the allegations, the Court finds that Plaintiff has stated a plausible failure to protect claim against Morgan, Harmms, and Thorsin based on their response, or lack thereof.

Shortly after the attack, Plaintiff showed Defendants Morgan, Harrms, and Thorsin the injuries to his face and arm. Based on the medical treatment provided, it appears that Plaintiff sustained extensive injuries from the attack. Plaintiff alleges that his right arm was placed in a hard cast due to a fractured ulna, and his mouth was wired shut for 10 weeks after oral surgery. Plaintiff

alleges that he did not receive medical attention until approximately 24 hours after the attack. Based on the alleged delay of medical treatment, the Court finds that Plaintiff has also stated a plausible claim for deliberate indifference to a serious medical need against Defendants Morgan, Harrms, and Thorsin. *See Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015) (whether the length of delay in treatment of an inmate's injury is tolerable depends upon the seriousness of the condition and the ease of providing treatment; in some cases, even brief, unexplained delays in treatment may constitute deliberate indifference).

While Plaintiff names Warden Jackson as a Defendant, he does not state if he is suing the Warden in his official capacity, individual capacity, or both, nor does Plaintiff claim that the Warden was present or participated in the alleged events. Section 1983 does not allow actions against individuals based solely on their supervisory role of others. *Brown v. Randle*, 847 F.3d 861, 865 (7th Cir. 2017) ("Public officials are accountable for their own conduct, but they are not vicariously liable for the acts of their subordinates."). Individual liability under § 1983 can only be based upon a finding that the defendant caused the deprivation alleged. *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003) (internal quotations and citations omitted). As Plaintiff fails to allege any personal participation by Warden Jackson, he is DISMISSED.

Plaintiff does not allege that Conwell was present during the attack, that Plaintiff informed Conwell about the attack and injuries, or that Conwell personally observed Plaintiff's injuries. As such, Plaintiff has failed to state a claim, and Conwell is DISMISSED.

**IT IS THEREFORE ORDERED:**

1)    Pursuant to its merit review of the Complaint under 28 U.S.C. § 1915A, the Court finds that Plaintiff states an Eighth Amendment failure to protect claim and deliberate indifference claim against Defendants Morgan, Harrms, and Thorsin. Additional claims shall not be included

in the case above, except in the Court's discretion on motion by a party for good cause shown under Federal Rule of Civil Procedure 15.

2) Defendants Jackson and Conwell are DISMISSED. The Clerk is directed to TERMINATE them as parties.

3) Plaintiff's motion for the Court to appoint pro bono counsel [2] is DENIED with leave to renew after Plaintiff demonstrates that he has made reasonable efforts to find counsel on his own. *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007). This typically requires writing to several lawyers and attaching the responses to the motion. If Plaintiff renews his motion, he should also set forth how far he has gone in school, any jobs he has held inside and outside of prison, any classes he has taken in prison, and any prior litigation experience he has.

4) Plaintiff's Motion for Status [9] is MOOT as a result of this Order.

5) This case is now in the process of service. The Court advises Plaintiff to wait until counsel has appeared for Defendants before filing any motions to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time unless otherwise directed by the Court.

6) The Court will attempt service on Defendants by mailing a waiver of service. If Defendants fail to sign and return a waiver of service to the Clerk within 30 days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals Service on Defendants and will require Defendants to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).

7) Defendants shall file an answer within 60 days of the date the Clerk sends the waiver of service. A motion to dismiss is not an answer. The answer should include all defenses

appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendants' position. The Court does not rule on the merits of those positions unless and until Defendants file a motion. Therefore, no response to the answer is necessary or will be considered.

8)     If Defendants have not filed an answer or appeared through counsel within 90 days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter an order setting discovery and dispositive motion deadlines.

9)     If Defendants no longer work at the address Plaintiff provided, the entity for whom Defendants worked while at that address shall submit to the Clerk Defendants' current work address, or, if not known, Defendants' forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

10)    This District uses electronic filing, which means that after Defendants' counsel has filed an appearance, Defendants' counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail to Defendants' counsel copies of motions and other documents that Plaintiff has filed with the Clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendants' counsel has filed an appearance and the Court has entered a scheduling order, which will explain the discovery process in more detail.

11) Counsel for Defendants are hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Counsel for Defendants shall arrange the time for the deposition. Plaintiff shall be provided a copy of all pertinent medical records upon request.

12) Within 10 days of receiving from defense counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization to Defendants' counsel. The Clerk is directed to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

13) Plaintiff shall immediately inform the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

14) The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.

ENTERED:  June 7, 2022

s/ Michael M. Mihm<br>Michael M. Mihm<br>United States District Judge