## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| JESUS DEJESUS, | ) |
| | ) |
|          **Plaintiff,** | ) |
| v. | )    No.: 22-cv-1134-MMM |
| | ) |
| LEONTA JACKSON, *et al.*, | ) |
| | ) |
|          **Defendants.** | ) |

### MERIT REVIEW ORDER – AMENDED COMPLAINT

Plaintiff, proceeding *pro se* and incarcerated at Pontiac Correctional Center ("Pontiac"), files suit under 42 U.S.C. § 1983 based upon alleged violations of his constitutional rights. The case is before the Court for a merit review of Plaintiff's Amended Complaint pursuant to 28 U.S.C. § 1915A. (Doc. 39). In reviewing the Amended Complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### FACTS

Plaintiff files suit against correctional officers Jillian Morgan and Zachary Harms, correctional lieutenant Paul Thorson, correctional sergeants Jennifer Boland and Carl Colwell, and correctional major Andrea Durham, all of whom were employees at Pontiac.

Plaintiff alleges that his cellmate, Chase McClanhan, violently assaulted him in S.P.C. cell 809 at approximately 5:00 or 6:00 a.m. on March 22, 2021. When Defendants Harms and Morgan came on the gallery for count at 7:15 a.m. on March 22, 2021, Plaintiff told them about the attack and showed them the injuries to his face and arm. Defendants Harms and Morgan told Plaintiff they would speak with Defendants Thorson and Colwell and then walked away.

Defendant Thorson came to Plaintiff's cell with a COVID-19 tester and asked McClanhan "if he was going to do this again." (Doc. 39 at 6). McClanhan told Defendant Thorson "no." *Id.* Defendant Thorson called Plaintiff to the front of the cell and saw his injuries. Defendant Thorson told Plaintiff not to go to yard or any call passes, which Plaintiff claims "clearly shows a cover up." *Id.* Defendant Thorson asked Plaintiff if he was alright. Plaintiff replied "yes" out of fear but shook his head "no" to give Defendant Thorson a sign that he needed help.

Plaintiff alleges that he gave Defendant Harms a request to give to Defendant Thorson because Plaintiff wanted to move to another cell. *Id*. at 18. Defendant Harms told Plaintiff that Defendants Colwell and Thorson had said they were not going to move anyone because "it's time to go home." *Id.* Plaintiff was left in his cell.

At shift change, Plaintiff gave an unknown officer a request to give to Defendants Durham and Boland to move him to another cell because he had been assaulted by his cellmate. *Id*. at 19-20. Plaintiff also requested medical attention for his injuries.

Defendants Durham and Boland toured the south cellhouse. Defendant Durham stopped at Plaintiff's cell, saw his visible injuries, and asked if Plaintiff and his cellmate were alright, as Defendants Thorson and Colwell informed her there had been an altercation between Plaintiff and his cellmate. Plaintiff told Defendant Durham that his cellmate assaulted him, and he asked to

2

move to another cell. Defendants Durham and Boland allegedly walked off the gallery, left Plaintiff in the cell, and did not obtain medical attention for him.

Plaintiff alleges that his cellmate attacked him again at approximately 7:15 a.m. on March 23, 2021, and threatened to kill Plaintiff if he said anything. Plaintiff states that he saw officers Painter and Garrison, who are not named as parties, that he had been assaulted by his cellmate and needed medical attention. Plaintiff was removed from his cell and taken to speak with investigator Anglin, who is not named as a party. Investigator Anglin took pictures of Plaintiff's injuries.

Plaintiff states that he had to have oral surgery for a right maxillary sinusitis fracture, which required him to have his mouth wired shut for ten weeks. His right ulna bone was fractured, and his right arm was placed in a hard case for eight weeks. Plaintiff states that he still experiences pain and numbing in his arm and wrist. He also states that his jaw locks and is painful. Plaintiff alleges that he was taken off his pain medication for no reason, but he does not specify who allegedly discontinued the pain medication.

Finally, Plaintiff alleges that about a month before the attack, Plaintiff and his cellmate asked Defendant Colwell and Corley, who is not named as a party, to move either Plaintiff or his cellmate out of the cell to prevent any further animosity. Defendant Colwell and Corley allegedly told Plaintiff and his cellmate "to either fight or refuse housing and go to the segregation unit because neither of 'us' are getting moved." *Id*. at 8.

## ANALYSIS

Plaintiff appears to be seeking to hold Defendants liable for the cellmate's attack. Prison officials must "take reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). For a prison official to be held liable on a failure to protect

claim, a plaintiff must satisfy a test that contains both an objective and subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

To satisfy the objective component, a plaintiff must present evidence showing "not only that he or she experienced, or was exposed to, a serious harm, but also that there was a substantial risk beforehand that that serious harm might actually occur." *Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005). A "substantial risk" is one that is so great that it is "almost certain to materialize if nothing is done." *Id.* at 911.

To satisfy the subjective component, the official must know of and disregard an excessive risk to a prisoner's safety. *Farmer*, 511 U.S. at 837. To support an inference that an official had actual knowledge of a substantial risk of harm, the inmate's complaint to the official typically must identify "a specific, credible, and imminent risk of serious harm." *Gevas v. McLaughlin*, 798 F.3d 475, 481 (7th Cir. 2015). "[T]here must be a 'strong likelihood' rather than a 'mere possibility' that violence will occur." *Estate of Davis v. Johnson*, 745 F.2d 1066, 1071 (7th Cir. 1984). An inmate's complaint that conveys "only a generalized, vague, or stale concern about one's safety typically will not support [such] an inference." *Gevas*, 798 F.3d at 480.

"A prison official must respond reasonably to a known risk of harm, but negligence or even gross negligence is not enough to show a constitutional violation." *Giles v. Tobeck*, 895 F.3d 510, 513 (7th Cir. 2018). "Instead the official's response must be so inadequate that it amounts to a reckless disregard for the risk and 'effectively condones the attack.'" *Id.* (internal citation omitted) (quoting *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010)).

Plaintiff alleges that he told Defendant Colwell and Corley about a month before the attack that he wanted to move to another cell to "prevent any further animosity" between him and his cellmate. (Doc. 39 at 8). Plaintiff's allegations are insufficient to establish that Defendant Colwell

4

had sufficient notice that Plaintiff's cellmate posed a substantial risk of physical harm to Plaintiff prior to the attack on March 22, 2021. *See Kemp v. Fulton Cnty.*, 27 F.4th 491, 497 (7th Cir. 2022) ("Without any evidence that [the officer] should have been on notice of a substantial risk to [the detainee's] safety, a jury could not conclude that [the officer's] actions were objectively unreasonable.").

Plaintiff alleges that he was attacked by his cellmate on March 22, 2021, and that Defendants Harms, Morgan, Thorson, Durham, Boland, and Colwell were aware that the attack had occurred and of his injuries. Despite their knowledge of the attack, injuries, and Plaintiff's requests to move to another cell, Defendants allegedly left Plaintiff and his cellmate in the same cell together for more than twenty-four hours, and Plaintiff was attacked by his cellmate a second time. Based on these allegations, the Court finds that Plaintiff has stated a plausible failure to protect claim against Defendants Harms, Morgan, Thorson, Durham, Boland, and Colwell.

After the first attack on March 22, 2021, Plaintiff alleges that Defendants Harms, Morgan, Thorson, Durham, and Boland saw the clearly visible injuries to his face and arm, but they did not seek medical attention for Plaintiff. Instead, Plaintiff allegedly remained in the cell for more than twenty-four hours before receiving medical attention for his allegedly serious injuries. It is well established that deliberate indifference to a serious medical need is actionable as a violation of the Eighth Amendment. *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and "either acts or fails to act in disregard of that risk." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). A claim does not rise to the level of an Eighth Amendment issue, however, unless the punishment is "deliberate or otherwise reckless in the criminal law sense, which means that the defendant must have committed an act so dangerous that his knowledge of the risk can be inferred

5

or that the defendant actually knew of an impending harm easily preventable." *Antonelli v. Sheahan,* 81 F.3d 1422, 1427 (7th Cir. 1996). Whether the length of delay in treatment of an inmate's injury is tolerable depends upon the seriousness of the condition and the ease of providing treatment; in some cases, even brief, unexplained delays in treatment may constitute deliberate indifference. *See Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015). Based on his allegations, the Court finds that Plaintiff has also stated a plausible Eighth Amendment claim for deliberate indifference to a serious medical need against Defendants Harms, Morgan, Thorson, Durham, and Boland for their alleged failure to seek medical attention for Plaintiff after the first attack occurred on March 22, 2021. Plaintiff does not allege that Defendant Colwell saw his injuries or was aware of them. Therefore, Plaintiff fails to state a deliberate indifference claim against Defendant Colwell.

### MOTION FOR APPOINTMENT OF COUNSEL

Plaintiff files a Motion for Appointment of Counsel asking the Court to appoint an attorney to represent him. (Doc. 42). "There is no right to court-appointed counsel in federal civil litigation." *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014). Evaluating whether to recruit pro bono counsel involves a two-step process. First, the Court must determine if the plaintiff made a reasonable attempt to secure counsel on his own, or conversely, if he has been precluded from doing so. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010). Next, the court must examine "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar v. Igiola*, 718 F.3d 692, 696 (7th Cir. 2013) (quoting *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007)). Relevant factors as to competency include, but are not limited to, a plaintiff's literacy, education, litigation experience, communication skills, psychological history, intellectual capacity, physical and mental health, and

ability to conduct discovery. *Bracey v. Grondin*, 712 F.3d 1012, 1020 n. 3 (7th Cir. 2013) (citing *Pruitt*, 503 F.3d at 655). The inquiry is individualized, taking all the relevant facts into consideration, including the stage of the litigation. *Navejar*, 718 F.3d at 696.

Here, the Court finds that Plaintiff made a reasonable effort to secure counsel on his own, as Plaintiff attaches letters to his Motion from attorneys who declined to represent him. Plaintiff states that he lacks litigation experience and does not have the intellectual capacity to represent himself because he scored 4.5 on an IDOC adult basic education test. Plaintiff also states that he is seriously mentally ill and is currently taking psychotropic medications, which he claims could hinder his ability to conduct discovery. Plaintiff's mental health conditions do not justify the recruitment of counsel at this stage. *See Medrano v. Boland*, 841 F. App'x 1008, 1010 (7th Cir. 2021) ("there is no entitlement to recruited counsel for prisoners with a history of mental impairments"); *Perry v. Sims*, 900 F.3d 505, 513 (7th Cir. 2021) (mental illness "is a pertinent and important factor" but does not create a "categorical" entitlement to counsel); *Olson*, 750 F.3d at 712 (noting that prisoner's "capable pleadings suggested that he was competent despite his mental-health problems"). The Court finds that Plaintiff appears competent to litigate the case himself at this early stage of the litigation process. Additionally, Plaintiff's claims are not complex and involve issues of which Plaintiff has direct, personal knowledge. Plaintiff's Motion for Appointment of Counsel is DENIED.

**IT IS THEREFORE ORDERED:**

1) Pursuant to its merit review of the Amended Complaint under 28 U.S.C. § 1915A, the Court finds that Plaintiff states an Eighth Amendment failure to protect claim against Defendants Harms, Morgan, Thorson, Durham, Boland, and Colwell and an Eighth Amendment deliberate indifference claim against Defendants Harms, Morgan, Thorson, Durham, and Boland.

Additional claims shall not be included in the case above, except in the Court's discretion on motion by a party for good cause shown under Federal Rule of Civil Procedure 15.

2) Plaintiff's Motion for Appointment of Counsel [42] is DENIED.

3) The Court, *sua sponte*, extends the discovery deadline to September 29, 2023, and the dispositive motions deadline to October 30, 2023.

4) Defendants Morgan and Thorson filed an Answer to Plaintiff's initial Complaint on August 8, 2022, and Defendant Harms filed an Answer on September 23, 2022. (Docs. 18 and 24). As Defendants Morgan, Thorson, and Harms have already appeared and answered, no waivers need to be issued for them.

5) The Court will attempt service on Defendants Durham, Boland, and Colwell by mailing a waiver of service. If Defendants fail to sign and return a waiver of service to the Clerk within 30 days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals Service on Defendants and will require Defendants to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).

6) Defendants shall file an answer within 60 days of the date the Clerk sends the waiver of service. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendants' position. The Court does not rule on the merits of those positions unless and until Defendants file a motion. Therefore, no response to the answer is necessary or will be considered.

7) If Defendants have not filed an answer or appeared through counsel within 90 days of the entry of this Order, Plaintiff may file a motion requesting the status of service.

8) If Defendants no longer work at the address Plaintiff provided, the entity for whom Defendants worked while at that address shall submit to the Clerk Defendants' current work address, or, if not known, Defendants' forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

9) This District uses electronic filing, which means that after Defendants' counsel has filed an appearance, Defendants' counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail to Defendants' counsel copies of motions and other documents that Plaintiff has filed with the Clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel.

10) Counsel for Defendants are hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Counsel for Defendants shall arrange the time for the deposition. Plaintiff shall be provided a copy of all pertinent medical records upon request.

11) Plaintiff shall immediately inform the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

12) The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service.

ENTERED:  4/4/23

s/ Michael M. Mihm
Michael M. Mihm
United States District Judge